UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

110 Michigan St NW
Grand Rapids, MI 49503
Phone: (616) 456-2381

**FILED - GR**
September 3, 2024 4:21 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: KB  SCANNED BY: ___/___

**1:24-cv-899**

**Hala Y. Jarbou**
**Chief U.S. District Judge**

Gabriel Molina,
Plaintiff,
V.
The State of Michigan,
Defendant.

Date: 9/3/2024

Case No.:
Judge:

## COMPLAINT

### I. INTRODUCTION

1. This case seeks to protect one of the bedrock principles of our democracy—the right to ensure transparency, accountability, and public oversight of government actions through the free and open recording of public officials in spaces where they perform their duties. The Plaintiff contends that the enforcement of Michigan Court Rule **MCR 8.115(C)(3)(b)** unlawfully curtails these fundamental rights, with profound implications for the public's ability to hold government institutions accountable. Plaintiff Gabriel Molina brings this action under **42 U.S.C. § 1983**, seeking injunctive relief, declaratory judgment, and damages for violations of his First, Fourth, and Fourteenth Amendment rights under the United States Constitution. Plaintiff challenges the constitutionality of Michigan Court Rule **MCR 8.115(C)(3)(b)**, which unlawfully restricts the recording of public officials within public areas of courthouses.

2. Plaintiff contends that **MCR 8.115(C)(3)(b)** is overly broad, vague, and fails to provide the clear standards required by law to prevent arbitrary and discriminatory enforcement, as established in **Grayned v. City of Rockford** and **Kolender v. Lawson**. These deficiencies infringe upon fundamental First Amendment rights, as reinforced by **Citizens United v. FEC** and other precedents.

1

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction under **28 U.S.C. §§ 1331** and **1343** because this action arises under the Constitution and laws of the United States.

4. Venue is proper in this district under **28 U.S.C. § 1391(b)** because the events giving rise to this action occurred within this district.

## III. PARTIES

5. Plaintiff Gabriel Molina is a resident of Wyoming, Michigan, and at all relevant times was engaged in recording public officials in public areas of Michigan courthouses to ensure transparency and accountability.

6. Defendant State of Michigan is responsible for the enactment and enforcement of Michigan Court Rules, including **MCR 8.115(C)(3)(b)**.

7. **Additional Defendants:** This complaint also implicates the following officials and entities involved in the enforcement of the challenged rule:
    - **Pablo Cortes, Judge of the 62A District Court:** Judge Cortes signed the local implementation of **MCR 8.115(C)(3)(b)** specific to the **62A District Court** in Wyoming, Michigan.
    - **62A District Court Security:** Court security personnel who enforced the rule and participated in the actions leading to the Plaintiff's trespass.
    - **62A District Court Administrator:** The court administrator who oversaw the enforcement of the rule and the subsequent denial of service to the Plaintiff.
    - **62A District Court Clerk:** The court clerk who denied the Plaintiff service based on the rule.
    - **Wyoming City Attorney:** The City Attorney's office, which ordered the Plaintiff to be threatened with arrest and trespassed for recording within the courthouse.
    - **Wyoming Police Department Officers:** The officers who enforced the rule under the orders of the City Attorney and were involved in threatening the Plaintiff with arrest and executing the trespass.

2

## IV. FACTUAL ALLEGATIONS

8. Plaintiff Gabriel Molina has, on multiple occasions, recorded public officials in public, non-restricted areas of Michigan courthouses, including the clerk's office at the **62A District Court** in Wyoming, Michigan. These recordings are part of his efforts to document and ensure the accountability of public officials in the performance of their duties.

9. **Public Officials and Accountability:** Public spaces within courthouses, such as hallways, clerk's offices, and lobbies, are where public officials engage with citizens as part of their official duties. As public officials, these employees are subject to public scrutiny, especially when performing their duties in areas accessible to the public. The ability to record these interactions is a fundamental First Amendment right that promotes transparency and accountability within the judicial system. Restricting this right undermines the principles of open government and hinders the public's ability to hold officials accountable.

10. **Courthouse as a Public Building:** Courthouses are public buildings, and the areas in question are public spaces open to the public for conducting legal business. Employees working in these areas are not private employees; they are public officials whose actions must be transparent and accountable to the public. Any rule that seeks to prevent the recording of these officials in public areas must be narrowly tailored to address specific, compelling concerns, rather than broadly restricting this fundamental right.

11. **Inconsistent Enforcement: MCR 8.115(C)(3)(b)** prohibits recording in public areas of the courthouse without the express consent of the individuals being recorded. This rule has been enforced against the Plaintiff, effectively preventing him from recording public officials in these public spaces, thereby impeding his ability to document government activities and hold public officials accountable. The inconsistency of allowing recording in courtrooms (where privacy and order concerns are more pronounced) but not in public lobbies or hallways highlights the arbitrary nature of the rule and undermines any claim that it is necessary to protect privacy or maintain order.

12. **Threat of Arrest and Trespass:** The Plaintiff was threatened with arrest under orders from the Wyoming City Attorney and was trespassed from the courthouse by Wyoming Police Department officers, further violating his rights. These actions were based on the enforcement of **MCR 8.115(C)(3)(b)** by **62A District Court** officials, including security personnel, the court administrator, and the court clerk, who denied the Plaintiff service. This represents an unjustified and extreme response to the Plaintiff's lawful activities, exacerbating the violation of his constitutional rights.

13. The entire interaction, from the time the Plaintiff entered the courthouse to the moment he was trespassed happened on August 30th, 2024 and was recorded by the Plaintiff and is attached as **Exhibit A**. This video clearly shows the Plaintiff's peaceful conduct, the denial of service by the clerk, the threats of arrest, and the statement that the city attorney directed the police to threaten the Plaintiff with arrest and to trespass him from the courthouse.

14. **Overbreadth and Vagueness: MCR 8.115(C)(3)(b)** is overly broad and vague, as it fails to clearly define the boundaries between permissible and impermissible recording activities within public courthouse areas. This ambiguity invites arbitrary enforcement, leading to inconsistent and discriminatory application of the rule. For example, while the rule prohibits recording in public lobbies without express consent, it allows recording in courtrooms, where privacy and order concerns are more significant. This inconsistency further highlights the arbitrary nature of the rule. Furthermore it fails to distinguish between private individuals and public officials, whose actions in public spaces should be subject to public scrutiny. The rule's broad and undefined language leads to arbitrary enforcement, unjustly restricting the Plaintiff's First Amendment rights. The application of this rule in public areas where government officials interact with the public is inconsistent, particularly given that recording is permitted within the courtroom—an area where privacy concerns are arguably more significant. This inconsistency highlights the arbitrary nature of the rule's enforcement and suggests an intent to avoid accountability rather than protect legitimate privacy interests.

15. **Security and Disruption Concerns: MCR 8.115(C)(6)** stipulates that the use of portable electronic devices can be limited or terminated in courthouses if their use is deemed "disruptive to court operations" or "compromises courthouse security." However, the act of recording is inherently passive, silent, and non-intrusive, lacking any inherent capacity to cause noise or disturbance. Moreover, courthouses are equipped with extensive security measures such as metal detectors, armed guards, and controlled access points, which are specifically designed to neutralize genuine security threats. The state would be hard-pressed to demonstrate that the mere act of recording compromises these robust security measures.

16. The enforcement of this rule against the Plaintiff has infringed upon his First Amendment right to record public officials, impeding his ability to ensure transparency and accountability in government.

## V. LEGAL BACKGROUND AND CASE LAW

### COUNT ONE: VIOLATION OF THE FIRST AMENDMENT (42 U.S.C. § 1983)

17. Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

18. **First Amendment Protections:** The First Amendment protects the right to gather information about government officials, including the right to record them in public spaces. This principle was affirmed in **Glik v. Cunniffe, 655 F.3d 78** (1st Cir. 2011), where the First Circuit held that the First Amendment protects the right to record public officials in public spaces. Additionally, in **Turner v. Driver, 848 F.3d 678** (5th Cir. 2017), the court further established that recording public officials, even in areas that are not traditional public forums, is a protected First Amendment activity. This principle is further reinforced by **Citizens United v. FEC, 558 U.S. 310** (2010), where the Supreme Court held that the government cannot impose restrictions on speech based on the identity of the speaker or the type of speech.

19. **Courthouses as Limited Public Forums:** While courthouses are government buildings, the areas in question—hallways, clerk's offices, and lobbies—are generally accessible to the public and function as limited public forums. In these forums, the government can impose reasonable restrictions on speech but cannot completely prohibit it without compelling justification. **MCR 8.115(C)(3)(b)**, however, effectively prohibits all recording in these public spaces without any narrowly tailored exceptions for legitimate First Amendment activities. This blanket prohibition is inconsistent with the principles outlined in **Nixon v. Warner Communications, Inc., 435 U.S. 589** (1978), which underscores the importance of transparency in public proceedings.

20. **Overbreadth and Prior Restraint: MCR 8.115(C)(3)(b)** constitutes a form of prior restraint, which is considered the most serious and least tolerable infringement on First Amendment rights. The rule is not narrowly tailored to serve a significant government interest, such as security or privacy, and its broad language fails to specify the types of activities it seeks to prevent. This leads to arbitrary enforcement that unjustifiably restricts the Plaintiff's ability to hold public officials accountable. As established in *Grayned v. City of Rockford*, **408 U.S. 104** (1972), and *Kolender v. Lawson*, **461 U.S. 352** (1983), laws that fail to provide clear standards for enforcement are unconstitutional for their vagueness and potential for arbitrary enforcement. Furthermore, the rule's failure to consider less restrictive means, such as designating specific areas within courthouses where recording might be restricted due to security concerns, underscores its constitutional deficiency. The overly broad application of **MCR 8.115(C)(3)(b)** not only fails strict scrutiny but also constitutes an unjustifiable prior restraint on free speech.

21. **Disruption and Practicality: MCR 8.115(C)(3)(b)** restricts recording or broadcasting outside courtrooms without the express consent of the individual being recorded. This broad restriction is applied regardless of the specific circumstances or location within the courthouse. However, recording in public areas like hallways or lobbies, where no court proceedings are actively taking place, does not inherently interfere with court operations. Additionally, existing laws such as those against disorderly conduct or contempt of court already provide adequate means to address any actual disruptive behavior. Therefore, this broad prohibition is unnecessary and overreaching.

22. **Precedent and Practical Considerations:** Courts have consistently ruled that restrictions on recording in public spaces must be justified by significant government interests and must be narrowly tailored. In cases such as ***Glik v. Cunniffe*** and ***Turner v. Driver***, courts affirmed that recording public officials in public spaces is a protected First Amendment activity, provided it does not interfere with the officials' duties. Recording devices in public spaces like lobbies and hallways are common in various public and government settings. Without a clear and compelling reason, there is no justification for treating courthouses differently. The inability to provide such justification supports the claim that **MCR 8.115(C)(3)(b)** is overly broad and constitutionally deficient.

23. **Security Concerns and Less Restrictive Means:** While the state may argue that the rule is necessary to maintain security and order within the courthouse, these concerns can be addressed through less restrictive means. For example, specific areas could be designated where recording is restricted due to security concerns, rather than imposing a blanket ban across all public areas. Additionally, security concerns are already addressed within the courtroom itself, where recording is allowed with permission. Extending this prohibition to public areas without any demonstrated necessity is an overreach that fails to balance the need for security with the public's right to record public officials, as discussed in **Chandler v. Florida, 449 U.S. 560** (1981).

24. Given the case law outlined above, it is clear that **MCR 8.115(C)(3)(b)** does not meet the constitutional standards required to restrict fundamental rights. **MCR 8.115(C)(3)(b)** is not only overly broad, vague, and an unconstitutional prior restraint on free speech, but it also fails to serve any compelling government interest. The rule's foundation on hypothetical concerns rather than concrete evidence further underscores its incompatibility with constitutional protections. Given these considerations, it is undeniable that **MCR 8.115(C)(3)(b)** is wholly unconstitutional under the First, Fourth, and Fourteenth Amendments.

## COUNT TWO: VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C. § 1983)

25. Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

26. **Unreasonable Seizure of Rights:** The enforcement of **MCR 8.115(C)(3)(b)** constitutes an unreasonable and unconstitutional seizure of the Plaintiff's First Amendment rights, which are integral to his personal autonomy and liberty. The rule's enforcement resulted in a significant interference with the Plaintiff's possessory interest in exercising his First Amendment rights, as protected under the Fourth Amendment. This extension of Fourth Amendment protections to the seizure of intangible rights is consistent with the principle established in *Soldal v. Cook County*, where the Supreme Court recognized that the Fourth Amendment guards against unlawful interference with personal liberties as well as physical property. Here, the possessory interest at stake is the Plaintiff's First Amendment right to gather and disseminate information about public officials, a right that is inextricably tied to his autonomy and dignity as a citizen. Furthermore, the Fourth Amendment, as emphasized in *Mapp v. Ohio*, **367 U.S. 643** (1961), serves as a critical safeguard against unlawful government intrusions, extending its protection to the seizure of rights as well.

27. **Seizure of Personal Autonomy:** The Constitution enshrines certain rights, such as the freedom of speech, as fundamental to personal autonomy. When these rights are unjustly restricted by the state, as with the enforcement of **MCR 8.115(C)(3)(b)**, it amounts to a seizure of the person themselves. The decision in *United States v. Jacobsen*, **466 U.S. 109** (1984), reinforces the notion that a seizure occurs when there is meaningful interference with an individual's liberty. In this case, the Plaintiff's ability to exercise his right to record public officials—a core aspect of his autonomy—has been unjustly interfered with by the rule, constituting an illegal seizure under the Fourth Amendment. This seizure is not merely a restriction on physical freedom but a fundamental attack on the Plaintiff's ability to engage in democratic processes and ensure governmental transparency.

28. **Broader Constitutional Protections:** The enforcement of **MCR 8.115(C)(3)(b)** against the Plaintiff must be viewed through the lens of broader constitutional protections that recognize the integral role of fundamental rights in personal autonomy. The Supreme Court's decisions in cases like *Griswold v. Connecticut*, **381 U.S. 479 (1965)**, underscore that rights essential to personal liberty cannot be arbitrarily restricted without violating constitutional protections. The arbitrary enforcement of **MCR 8.115(C)(3)(b)** against the Plaintiff, which restricts his ability to record public officials in public areas, is a direct affront to his autonomy and, thus, constitutes an illegal seizure under the Fourth Amendment.

29. **No Legitimate Governmental Justification:** The state may argue that the rule is necessary to prevent disruptions or maintain security. However, without concrete evidence showing that the unrestricted recording of public officials in public areas genuinely threatens these interests, the enforcement of the rule represents an arbitrary and unreasonable restriction on constitutional rights. As established in *Safford Unified School District v. Redding*, **557 U.S. 364 (2009)**, and *Camara v. Municipal Court*, **387 U.S. 523 (1967)**, the government's interest must be balanced against the intrusion upon personal liberties. In this case, the enforcement of **MCR 8.115(C)(3)(b)** fails to justify the significant intrusion upon the Plaintiff's rights, making it an unreasonable and illegal seizure under the Fourth Amendment.

## COUNT THREE: VIOLATION OF THE FOURTEENTH AMENDMENT (42 U.S.C. § 1983)

30. Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

31. **Due Process and Vagueness:** The enforcement of **MCR 8.115(C)(3)(b)** against the Plaintiff, including the threat of arrest and trespassing him from the courthouse, violates his Fourteenth Amendment rights by depriving him of the liberty to engage in constitutionally protected activities without due process of law. The rule's vague and overly broad language invites arbitrary and discriminatory enforcement, which is precisely what the due process clause of the Fourteenth Amendment seeks to prevent. In *Papachristou v. City of Jacksonville*, the Supreme Court invalidated a vagrancy ordinance for being vague and inviting arbitrary enforcement, highlighting the constitutional need for clear, precise legal standards. The same reasoning applies here, where the lack of clear guidelines in **MCR 8.115(C)(3)(b)** violates the Plaintiff's right to fair notice and protection from arbitrary governmental action.

32. **Inconsistent Enforcement:** Although the rule may be presented as necessary for maintaining courthouse order and protecting privacy, its inconsistent application—allowing recording in courtrooms but not in public lobbies or hallways—highlights its arbitrary nature. This inconsistency further demonstrates that the rule fails to serve a compelling government interest in a narrowly tailored manner.

## VI. MCR 8.115(C)(3)(b) FAILS STRICT SCRUTINY AND IS UNCONSTITUTIONAL

33. **Failure to Meet Strict Scrutiny:** MCR 8.115(C)(3)(b) is an overly broad regulation that fails to meet the strict scrutiny required when a law infringes on fundamental constitutional rights. To pass strict scrutiny, the rule must be narrowly tailored to serve a compelling government interest and must be the least restrictive means of achieving that interest. However, **MCR 8.115(C)(3)(b)** imposes a blanket ban on recording in public areas of courthouses without demonstrating a compelling justification for such a broad restriction. In *Ashcroft v. ACLU*, the Supreme Court emphasized that the government must prove that less restrictive alternatives would be ineffective in achieving the stated objective. Here, the rule's failure to consider less restrictive alternatives, such as limiting the prohibition to specific, sensitive areas within the courthouse, further underscores its constitutional deficiencies. The rule's overreach and lack of narrow tailoring render it incompatible with the stringent requirements of strict scrutiny.

34. **No Justification for Broad Application:** The rule indiscriminately restricts recording across all public areas within the courthouse, without adequately demonstrating that such a broad restriction is necessary to protect any compelling interest. Public spaces within courthouses, such as lobbies and hallways, are areas where the public has the right to observe and document government activities. **MCR 8.115(C)(3)(b)** overreaches by imposing a blanket ban on these constitutionally protected activities.

35. **Overreach Without Consideration of Less Restrictive Means:** The rule's sweeping nature indicates a disregard for the principle that any restriction on First Amendment rights must be the least restrictive means of achieving the stated objective. By failing to consider less restrictive options that could address legitimate concerns without broadly infringing on constitutional rights, **MCR 8.115(C)(3)(b)** reveals itself as a constitutionally defective regulation.

36. **Absolute Protection Required:** The Constitution requires that any infringement on fundamental rights, particularly those protected by the First Amendment, be narrowly tailored and serve a compelling government interest in the least restrictive manner possible. **MCR 8.115(C)(3)(b)** does not meet this requirement and is therefore unconstitutional. The rule's failure to consider less restrictive alternatives further underscores its incompatibility with the constitutional protections it seeks to infringe upon.

37. In light of the above arguments and established case law, it is evident that **MCR 8.115(C)(3)(b)** cannot withstand constitutional scrutiny. Its broad, vague, and arbitrary application infringes upon fundamental rights guaranteed by the First, Fourth, and Fourteenth Amendments. The rule's unconstitutional nature is undeniable, and it must be invalidated to protect the public's right to transparency, accountability, and free expression.

38. **Necessity of Invalidating the Rule:** Given its broad and unjustified restriction on fundamental rights, **MCR 8.115(C)(3)(b)** cannot be upheld. The rule must be invalidated in its entirety to protect the constitutional rights of the public to record and observe in public spaces, free from overreaching governmental interference.

39. The enforcement of **MCR 8.115(C)(3)(b)** appears to be driven more by hypothetical or speculative concerns rather than concrete, demonstrable issues. The rule is broadly applied without clear evidence that recording in public areas of courthouses poses any genuine threat to security, order, or privacy. For instance, while the state might argue that the rule is necessary to prevent disruptions or protect the privacy of individuals within the courthouse, it fails to provide any specific examples or data demonstrating that such incidents have occurred as a result of public recording.

40. In ***United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803** (2000), the Supreme Court held that the government cannot restrict speech based on speculative harms; it must demonstrate that the harms are real and that the restriction directly alleviates them. **MCR 8.115(C)(3)(b)** fails this standard, as it imposes a blanket restriction on recording without any concrete evidence of actual harm. The state has not shown that less restrictive means, such as addressing specific instances of disruption or privacy concerns on a case-by-case basis, would be insufficient to address these hypothetical concerns.

41. Furthermore, the speculative nature of the rule's justification undermines its ability to meet the strict scrutiny standard. In ***Brown v. Entertainment Merchants Association*, 564 U.S. 786** (2011), the Court emphasized that the government must present actual evidence of harm, rather than relying on assumptions or conjecture. Here, the lack of real, documented instances where recording in public areas of courthouses has led to the harms the rule seeks to prevent suggests that the rule is not based on a compelling government interest but rather on unfounded fears or hypothetical scenarios.

11

42. By basing **MCR 8.115(C)(3)(b)** on hypothetical concerns rather than concrete evidence, the state has failed to justify the rule's broad application. This speculative basis cannot support the severe restrictions imposed on First Amendment rights, rendering the rule constitutionally deficient.

## VII. DAMAGES AND RELIEF REQUESTED

### A. Compensatory Damages:

43. Plaintiff seeks compensatory damages for the harm suffered as a result of the enforcement of **MCR 8.115(C)(3)(b)**. This includes damages for the emotional distress caused by the threat of arrest, being wrongfully trespassed from a public courthouse, and the infringement on his constitutional rights.

44. **Precedent for Compensation:** In similar cases, such as **Robinson v. Fetterman, 378 F. Supp. 2d 534** (E.D. Pa. 2005), plaintiffs have been awarded significant damages for violations of their First Amendment rights when recording public officials. In **Morales v. Cadena, 825 F.2d 1095** (7th Cir. 1987), the plaintiff was awarded $75,000 in compensatory damages for a similar infringement on First Amendment rights. Given the severity of the violations in this case, Plaintiff seeks $75,000 in compensatory damages.

### B. Punitive Damages:

45. Plaintiff seeks punitive damages against the State of Michigan for the willful and knowing violation of his constitutional rights, including the orders from the city attorney to threaten the Plaintiff with arrest and trespass him without just cause. In **Cameron v. City of Pontiac, 813 F.2d 782** (6th Cir. 1987), a court awarded $100,000 in punitive damages in a case involving a violation of First Amendment rights through wrongful arrest. Similarly, in **Haber v. Evans, 268 F. Supp. 2d 507** (E.D. Pa. 2003), the court awarded $250,000 in punitive damages for retaliation against protected speech. Plaintiff requests $150,000 in punitive damages, which are intended to punish the wrongful actions taken by the State and to deter similar conduct in the future, especially regarding the suppression of constitutionally protected activities like recording public officials in public spaces.

## C. Injunctive and Declaratory Relief:

46. Plaintiff requests a declaratory judgment that **MCR 8.115(C)(3)(b)** is unconstitutional as applied to public, non-restricted areas of Michigan courthouses. This rule, as currently enforced, infringes upon the First Amendment rights of individuals who seek to document the actions of public officials performing their duties in public spaces, thereby preventing transparency and accountability.

47. Plaintiff also seeks an injunction preventing the State of Michigan from enforcing **MCR 8.115(C)(3)(b)** in a manner that restricts the recording of public officials in public areas of courthouses. The rule's blanket prohibition on recording in these public spaces is overly broad, lacks necessary justification, and imposes an unconstitutional prior restraint on free speech.

## D. Other Relief:

48. Plaintiff seeks such other and further relief as the Court deems just and proper.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Issue a declaratory judgment stating that **MCR 8.115(C)(3)(b)** is unconstitutional as it violates the First, Fourth, and Fourteenth Amendments to the United States Constitution.

2. Issue an injunction preventing the State of Michigan from enforcing **MCR 8.115(C)(3)(b)** in any manner that restricts the recording of public officials in public areas of courthouses.

3. Award Plaintiff compensatory and punitive damages as appropriate.

4. Grant such other and further relief as the Court deems just and proper."

**Respectfully submitted,**

Gabriel Molina
1979 Osmer Ave SW
Wyoming, MI 49519
(616) 638-6620