UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GABRIEL MOLINA,

       Plaintiff,

v.                                                                Hon. Hala Y. Jarbou

STATE OF MICHIGAN,                                   Case No. 1:24-cv-899
et al.,

       Defendants.

## REPORT AND RECOMMENDATION

Plaintiff Gabriel Molina filed his complaint in this case on September 3, 2024, against the State of Michigan; 62A District Court Judge Pablo Cortes; Unknown Parties #1 (named as 62A District Court security personnel); Unknown Parties #2 (named as 62A District Court Administrator); Unknown Parties #3 (named as 62A District Court Clerk); the Wyoming City Attorney's Office (named as Wyoming City Attorney); and Unknown Parties #4 (named as Wyoming Police Department Officers. Molina alleges constitutional violations under 42 U.S.C. § 1983. Specifically, he alleges that Michigan Court Rule 8.115(C)(3)(b), which prohibits photographing, recording, broadcasting, and live streaming an individual without that individual's consent within non-courtroom areas of a courthouse, violates the First Amendment and, as enforced against him, violated his rights under the First, Fourth, and Fourteenth Amendments. For relief, Molina seeks injunctive and declaratory relief as well as compensatory and punitive damages.

Having granted Molina's motion to proceed as a pauper (ECF No. 6), I have conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

relief from a defendant who is immune from such relief. After conducting this review, I recommend that Molina's complaint be dismissed because it seeks relief against parties immune under the Eleventh Amendment and fails to state a claim.

## I. Background

Molina alleges that he is a resident of Wyoming, Michigan, and has engaged in recording public officials in public areas of Michigan courthouses to ensure transparency and accountability in their performance of their duties. (ECF No. 1 at PageID.2–3.) It appears that Molina may be involved in a legal proceeding in the 62A District Court in Wyoming. In any event, he alleges that on August 30, 2024, he was recording clerk's office employees and/or other individuals in the clerk's office when security personnel, the court administrator, and the court clerk notified Molina that he was violating Michigan Court Rule 8.115(C)(3). Rule 8.115(C)(3)(b) provides: "In areas of a courthouse other than courtrooms, no one may photograph, record, broadcast, or live stream an individual without that individual's prior express consent." A "courthouse 'includes all areas within the exterior walls of a court building, or if the court does not occupy the entire building, that portion of the building used for the administration and operation of the court.'" Mich. Ct. R. 8.115(C)(2)(b). Molina alleges that on orders from the Wyoming City Attorney, officers of the Wyoming Police Department threatened him with arrest and trespassed him from the courthouse for violating Rule 8.115(C)(3)(b). (*Id.* at PageID.4.)

## II. Discussion

### A.    Eleventh Amendment Immunity

Molina's claims against the State of Michigan are barred in this federal Court by the Eleventh Amendment. Regardless of the form of relief requested, the States and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute.

*See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In addition, to the extent Molina sues Judge Cortes or the 62A District Court Clerk or Administrator in their official capacities for money damages, such claims are also barred by the Eleventh Amendment because Michigan's courts are arms of the State of Michigan entitled to immunity. *See Pucci v. 19th District Court*, 628 F.3d 752, 760–74 (6th Cir. 2010); *Smith v. Skryzynski*, No. 2:16-CV-12129, 2016 WL 3230701, at *3 (E.D. Mich. June 13, 2016) ("Eleventh Amendment immunity applies to state employees, such as prosecutors, judges, and court clerks who are sued in their official capacities."); *Salaam El v. City of Dearborn*, No. 09-12136, 2010 WL 582773, at *6 (E.D. Mich. Feb. 18, 2010) ("[A]s a state employee sued in his official capacity, the suit is really against the State of Michigan and, therefore, Judge Hultgren is entitled to immunity from suit pursuant to the Eleventh Amendment and the doctrine of sovereign immunity.").

### B.    Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted).

As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is

3

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

Because Molina is proceeding pro se, the Court must construe his pleading more liberally than it does for pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). But this liberal pleading standard "is not without its limits, and does not 'abrogate basic pleading essentials in pro se suits.'" *Clark v. Johnston*, 413 F. App'x 804, 817 (6th Cir. 2011) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Stated differently, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001). To require otherwise "would not only strain judicial resources . . . but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### 1.    First Amendment

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In Count One, Molina alleges that Rule 8.115(C)(3)(b) violates the First Amendment. The initial task in analyzing Molina's First Amendment claim is identifying the theory he asserts—a freedom-of-expression claim or an access-to-information claim. *See S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*, 499 F.3d 553, 559 (6th Cir. 2007). His assertion that "[t]he First Amendment protects the right to gather information about government officials, including the right to record them in public spaces" (ECF No. 1 at PageID.5), suggests that he asserts that the rule violates his right of access under the First Amendment. More specifically, he contends that he has a First Amendment right to "record public officials in spaces where they perform their duties" (*Id.* at PageID.1), and that Rule 8.115(C)(3)(b) impinges that right. The cases he cites, *Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017), and *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011), do not support his position under the facts he alleges, as both cases concerned the right of an individual to record police officers performing their duties in public. Neither case addressed an individual's right to record public employees performing their duties inside a government building dedicated to a specific government function. Nonetheless, for purposes of my review, I will assume that an individual such as Molina has a First Amendment right to record public employees working in public buildings.

It is well established that the First Amendment guarantees the public and the press access to government information under certain circumstances. *See Detroit Free Press v. Ashcroft*, 303 F.3d 681, 700–01 (6th Cir. 2002) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)). As noted in *S.H.A.R.K.*, however, this right is limited, as "'[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control.'" 499 F.3d at 560 (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 9–10 (1978)). Moreover, "[t]he amount of access to which the government must give the public for First Amendment activities, and the standards by which a court will evaluate limitations on those rights, depends on the nature of the forum at issue." *John K. MacIver Inst. for Pub. Pol'y, Inc. v. Evers*, 994 F.3d 602, 609 (7th Cir. 2021) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983)); *see also Bloedorn v. Grube*, 631 F.3d 1218, 1230 (11th  Cir. 2011) ("It is by now clear that the First Amendment does not guarantee access to property just because it is owned by the government.") (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 803 (1985)).

Because Molina pleads his claim as an access rather than a speech claim, it is appropriate, at least at the outset, to begin with the framework set forth in *S.H.A.R.K.*, a right-of-access case. A court first "ask[s] what rule the government is invoking that prohibits the plaintiffs from access to information . . . ." 499 F.3d at 560. Second, the court must determine "whether tha rule 'selectively delimits the audience.'" *Id.* (quoting *D'Amario v. Providence Civic Ctr. Auth.*, 639 F. Supp. 1538, 1543 (D.R.I. 1986)). Third, the court must "inquire into the government's stated interest for invoking the rule." *Id.* at 561. Last, a court "must apply the applicable test to determine whether the government's stated interest is sufficiently related to the means of accomplishing that interest. . . ." *Id.* That is, "if the rule does not selectively delimit the audience, [the court] uphold[s] the

6

restriction if it is reasonably related to the government's interest; if the rule does selectively delimit the audience, a stricter level of scrutiny will apply." *Id.* The Sixth Circuit did not apply or even mention forum analysis in *S.H.A.R.K*, possibly because the restriction on access occurred in a public park that did not implicate specific concerns about access to a government building or government employees. Nonetheless, as the Seventh Circuit observed in *Evers*, the nature of the forum is useful for determining both the extent of access the government must provide to the public and the standard by which the limitation on the right of access is evaluated. 994 F.3d at 609.

The Supreme Court has recognized three types of public fora: the traditional public forum, the designated public forum, and the limited public forum. *See Pleasant Grove City v. Summum*, 555 U.S. 460, 469–70 (2009). A traditional public forum is one which by tradition or government mandate has "been devoted to assembly and debate, such as a street or park." *Kincaid v. Gibson*, 236 F.3d 342, 348 (6th Cir. 2001) (internal quotation marks omitted). "The government creates a designated public forum when it opens a piece of public property to the public at large, treating [it] as if it were a traditional public forum." *Miller v. Cincinnati*, 622 F.3d 524, 534 (6th Cir. 2010). Government restrictions based on the content of speech in traditional and designated public fora are subject to strict scrutiny analysis. *Pleasant Grove*, 555 U.S. at 469–70.

A limited public forum is distinct from a traditional or designated public forum. *Miller*, 622 F.3d at 535 n. 1. As the Sixth Circuit has explained, "[a] government entity may 'create a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects.'" *Id.* at 534–35 (quoting *Pleasant Grove*, 555 U.S. at 470). "When the State establishes a limited public forum, the State is not required to and does not allow persons to engage in every type of speech." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001). The State's power to restrict speech in a limited public forum is not, however, unlimited. *Id.* Any such

restriction "must not discriminate against speech on the basis of viewpoint, and the restriction must be reasonable in light of the purpose served by the forum." *Id.* at 106–07 (internal citations and quotation marks omitted); *see also Enoch v. Hamilton Cnty. Sheriff's Office*, 818 F. App'x 398, 405 (6th Cir. 2020) ("The government may restrict speech [in a limited public forum] so long as the restrictions are viewpoint neutral and 'reasonable in the light of the purpose to be served by the forum.'" (quoting *Hartman v. Thompson*, 931 F.3d 471, 479 (6th Cir. 2019)). However, the government's restriction "need not be the most reasonable or the only reasonable limitation." *Cornelius*, 473 U.S. at 808.

"A nonpublic forum, in contrast, is a government-owned property that is not by tradition or governmental designation a forum for public communication." *Miller*, 622 F.3d at 534 (internal quotation marks omitted). For a nonpublic forum, the government may limit access "based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Helms v. Zubaty*, 495 F.3d 252, 256 (6th Cir. 2007) (internal quotation marks omitted). In determining whether a forum is some type of public forum or a non-public forum, the Sixth Circuit focuses on whether the government has opened the property for public discourse. *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 750 (6th Cir. 2004).

The Sixth Circuit has held that a courtroom is a nonpublic forum, *see Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005) (noting that a courtroom is "where the First Amendment rights of everyone (attorneys included) are at their constitutional nadir"), but it has not considered in a published decision the nature of other areas within a courthouse. The Supreme Court, however, has indicated that the entire interior of a courthouse is non-public forum property. *See United States v. Grace*, 461 U.S. 171, 178–80 (1983) (observing that the Supreme Court building and

8

grounds other than public sidewalks are not public fora "traditionally held open for the use of the public for expressive activities"). In *Enoch v. Hamilton County Sheriff's Office*, 818 F. App'x 398 (6th Cir. 2020), the court considered the application of a local court rule prohibiting recording "in any courtroom or hearing room, jury room, judge's chambers or ancillary area (to be determined in the sole discretion of the Court) without the express permission of the Court," in accordance the parties' agreement that the hallway outside the courtroom was a limited public forum. *Id.* at 400, 405. Because Molina alleges that "hallways, clerk's offices, and lobbies" in courthouses function as limited public fora (ECF No. 1 at PageID.6), it is proper to consider Rule 8.115(C)(3)(b) under the standard applicable to such fora.

In *Sheets v. City of Punta Gorda*, 415 F. Supp. 3d 1115 (M.D. Fla. 2019), the defendant city had adopted an ordinance governing video and sound recording in the city hall building that, like Rule 8.115(C)(3)(b), required the consent of any individual being recorded. There, similar to the instant case, the plaintiff was trespassed from city hall after he continued to record employees who refused to consent. After noting that an individual has a First Amendment right "to gather information about what public officials do on public property, and specifically, a right to record matters of public interest," *id.* at 1121 (quoting *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000)), the court evaluated the ordinance's restriction in the context of a limited public forum by considering whether it was (1) reasonable; and (2) viewpoint neutral. *Id.* at 1122 (citing *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of Law v. Martinez*, 561 U.S. 661, 679 & n.11 (2010)). First, the court concluded that the restriction on recording was reasonable given its purpose and context. It noted that the purpose of city hall was to conduct "legitimate public business" and that, if someone refused to stop recording, the city would consider that person a disruption to city business. *Id.* at 1123. The court observed that the city had adopted the ordinance

because prior unconsented recordings had created disruptions for city employees while conducting city business and videos of city employees had circulated on the internet, leading to, among other things, death threats and suspicious packages in the mail. *Id.* The court further observed that the ordinance did not completely exclude the plaintiff from city hall, but instead allowed him to video any part of the building so long as he was not recording a person who did not consent. *Id.* As for viewpoint neutrality, the court determined that the ordinance was "facially viewpoint neutral because it does not target any viewpoint, ideology, or opinion," but instead "regulate[d] the conduct of all City Hall visitors equally without regard to viewpoint." Stated differently, the court said, the ordinance applied to everyone regardless of why they showed up at city hall with a camera. *Id.* at 1124. In addition, in responding to the plaintiff's argument that the ordinance gave city employees unbridled discretion to restrict recording, the court observed that because the city could have simply prohibited all recording in city hall, the ordinance likely allowed more speech (or access) than necessary. *Id.* at 1125.

Here, as in *Sheets*, Rule 8.115(C)(3)(b) is both viewpoint neutral and reasonable in light of the purpose to be served by a courthouse. The rule is viewpoint neutral because it does not "distinguish favored speech from disfavored speech on the basis of the ideas or views expressed . . . ." *Turner Broadcasting Sys., Inc. v. F.C.C.*. 512 U.S. 622, 643 (1994). Rather, it applies to every person who seeks to record employees or other persons in non-courtroom areas of a courthouse, regardless of viewpoint. In short, it "places no restrictions on . . . either a particular viewpoint or any subject matter that may be discussed [or recorded]." *Hill v. Colorado*, 530 U.S. 703, 723 (2000). The rule is also reasonable in light of the purpose of a courthouse, which "is principally to facilitate the smooth operation of a government's judicial functions." *Huminski v. Corsones*, 396 F.3d 53, 91 (2d Cir. 2005); *see also Mead v. Gordon*, 583 F. Supp. 2d 1231, 1239 (D. Or. 2008)

("The State 'has a legitimate need to preserve an orderly and safe place to conduct the public's business' and to maintain 'proper order and decorum in the courtroom.'" (quoting *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 967–68 (9th Cir. 2002))).

As in *Sheets*, Rule 8.115(C)(3)(b) serves the legitimate purpose of ensuring the smooth operation of court business by minimizing the potential for disruption caused by individuals who seek to record not only court employees, but ordinary citizens having business with the court. At the same time, the rule allows citizens substantial access to courthouse facilities (other than courtrooms) by allowing them to record places and persons in the courthouse so long as they obtain consent from any person being recorded. In fact, many courts have adopted similar rules, some even precluding photographs or video and audio recording in courthouses altogether without first obtaining prior court approval, that have survived First Amendment challenges.[1] *See United States v. Gileno*, 350 F. Supp. 3d 910, 917–18 (C.D. Cal. 2018) (holding that a federal court's electronic devices policy providing that electronic devices brought into the courthouse could not be used to photograph or produce audio or video recording was viewpoint neutral and reasonable because it served a legitimate security need); *Decker v. Bales*, No. CV-16-02872, 2017 WL 6407783, at *3 (D. Ariz. Feb. 28, 2017) (rejecting First Amendment challenge to Arizona Supreme Court rules governing recording of court proceedings, including Rule 122.1 prohibiting photographs or video recording of individuals outside a courtroom without their consent); *Leibovitz v. Barry*, No. 15-Cv-1722, No. 2016 WL 5107064, at *7 (E.D.N.Y. Sept. 20, 2016) (holding that administrative

---

[1] This Court, in fact, has its own policy regarding electronic communications devices which sweeps more broadly than Rule 8.115(C)(3)(b). Under the policy, electronic communication devices capable of recording or transmitting data, video, or audio are prohibited in federal court facilities unless the individual falls within one of the listed exemptions. W.D. Mich. LGenR 4.3(b).

rule prohibiting photographs, video or audiotaping, or broadcasting in all areas of a courthouse without permission was viewpoint neutral and reasonable in light of the function of a courthouse).

Although Molina alleges that other, less restrictive means exist for addressing the concerns at which Rule 8.115(C)(3)(b) is aimed, as noted above, the restriction "need not be the most reasonable or the only reasonable limitation." *Cornelius*, 473 U.S. at 808. Moreover, regardless of whether prior recording activity has actually disrupted business conducted in Michigan's courthouses, "the Government need not wait until havoc is wreaked to restrict access to a nonpublic forum." *Id.* at 809–10.

Finally, in addition to satisfying a forum analysis, the rule passes muster under the Sixth Circuit's test in *S.H.A.R.K.* for access restrictions.[2] That is, it does not selectively delimit the audience, and it is reasonably related to the government's interest in preventing disruptions to court operations.

### a.  Overbreadth

Molina cites several grounds in his complaint for invalidating the rule. First, he contends that it violates the First Amendment because it is overbroad, which presents a facial challenge. "A facial challenge to a law's constitutionality is an effort 'to invalidate the law in each of its applications, to take the law off the books completely.'" *Speet v. Schuette*, 726 F.3d 867, 871–72 (6th Cir. 2013) (quoting *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (en banc)). "Sustaining a facial attack to the constitutionality of a state law . . . is momentous and consequential. It is an 'exceptional remedy.'" *Id.* at 872 (quoting *Carey v. Wolnitzek*, 614 F.3d 189, 201 (6th Cir. 2010). "Because of the wide-reaching effects of striking down a statute on its face . . . we have recognized that the overbreadth doctrine is 'strong medicine' and have employed

---

[2] Because Rule 8.115(C)(3)(b) is viewpoint neutral and reasonably related to the operation of courthouses, Molina's claim would also fail under a freedom-of-expression theory.

it with hesitation, and then 'only as a last resort.'" *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999). The overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when "judged in relation to the statute's plainly legitimate sweep." *City of Chicago v. Morales*. 527 U.S. 41, 52 (1999) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612–15 (1973)). The doctrine is "an exception to traditional rules of standing and is applicable only in First Amendment cases in order to ensure that an overbroad statute does not act to 'chill' the exercise of rights guaranteed protection." *Leonardson v. City of East Lansing*, 896 F.2d 190, 195 (6th Cir. 1990) (citing *NAACP v. Button*, 371 U.S. 415, 433 (1963)). "Facial challenges to overly broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court." *Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984). A plaintiff asserting an overbreadth challenge must "demonstrate that a 'substantial number of instances exist in which the law cannot be applied constitutionally.'" *Glenn v. Holder*, 690 F.3d 417, 422 (6th Cir. 2012) (quoting *Richland Bookmart, Inc. v. Knox Cnty.*, 555 F.3d 512, 532 (6th Cir. 2009)). Thus, "[i]n order for a statute to be found unconstitutional on its face on overbreadth grounds, 'there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court.'" *Leonardson*, 896 F.2d at 195 (quoting *City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984).

Here, Molina fails to allege facts in his complaint identifying any realistic danger that Rule 8.115(C)(3)(b) will significantly compromise the First Amendment rights of parties not before the Court. Indeed, it is difficult to conceive of such a circumstance.

### b.    Vagueness

Next, Molina asserts that the rule is impermissibly vague. The void-for-vagueness doctrine, which arises under the Due Process Clause, protects speakers "from arbitrary and discriminatory enforcement of vague standards." *National Endowment for the Arts v. Finley*, 524 U.S. 569, 588 (1998). "A statute is unconstitutionally vague if it denies fair notice of the standard of conduct for which the citizen is to be held accountable, or if it is an unrestricted delegation of power which leaves the definition of its terms to law enforcement officers." *American–Arab Anti–Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 608-09 (6th Cir. 2005) (quoting *Leonardson*, 896 F.2d at 196). "Due process requires that this Court hold a statute, ordinance, or resolution void for vagueness 'if its prohibitive terms are not clearly defined such that a person of ordinary intelligence can readily identify the applicable standard for inclusion and exclusion.'" *Smith ex rel. Smith v. Mount Pleasant Pub. Schs.*, 285 F. Supp. 2d 987, 993 (E.D. Mich. 2003) (quoting *United Food & Commercial Workers Union, Local 109 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 358–59 (6th Cir. 1998)).

Rule 8.115(C)(3)(b) is not impermissibly vague, as it gives fair notice to persons of ordinary intelligence as to what is prohibited: recording an individual in areas of a courthouse other than the courtroom without their consent. Molina complains that the rule is ambiguous because it probits recording in public lobbies without consent, but allows recording in courtrooms. (ECF No. 1 at PageID.4.) He is mistaken. Rule 8.115(C)(3)(a), which applies to audio and visual recording and similar activities in a courtroom, provides, "In a courtroom, no one may use a portable electronic device to take photographs or for audio or video recording, broadcasting, or live streaming unless that use is specifically allowed by the Judge presiding over that courtroom." Rule 8.115(C)(3)(b) thus has no application to recording in courtrooms. Molina further contends that the rule fails to distinguish between private individuals and public officials (court employees) (*id.*),

but this distinction does not matter, as the Michigan Supreme Court—which adopts the Michigan Rules of Civil Procedure—may limit or prohibit recording of all individuals inside a courthouse so long as the rule or regulation complies with the constitutional standards set forth above.

### c.    Prior Restraint

Finally, Molina contends that Rule 8.115(C)(3)(b) is a prior restraint that gives government officials standardless discretion. In broad terms, "[a] prior restraint is any law 'forbidding certain communications when issued in advance of the time that such communications are to occur.'" *McGlone v. Bell*, 681 F.3d 718, 733 (6th Cir. 2012) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)); *see also Déjà Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 400 (6th Cir. 2001) ("A 'prior restraint' exists when the exercise of a First Amendment right depends on the prior approval of public officials."). "Any system of prior restraints of expression [bears] a heavy presumption against its constitutional validity, and a party who seeks to have such a restraint upheld thus carries a heavy burden of showing justification for the imposition of such a restraint." *County Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 485 (6th Cir. 2002) (quoting *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971)). The prior restraint must not delegate overly broad discretion to official decision-makers. *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 130 (1992).

In *McKay v. Federspiel*, No. 14-cv-10252, 2014 WL 7013574 (E.D. Mich. Dec. 11, 2014), the plaintiff brought a First Amendment challenge to a court's order banning electronic devices in courtrooms, offices, and related common areas based a right-of-access theory, as Molina does here. As part of his challenge, the plaintiff asserted that the order was a prior restraint that provided standardless discretion. The court observed that because the plaintiff's alleged right to record events was one of access rather than expression, the standardless discretion analysis did not apply. *Id.* at \*16–17. It further noted that even if the analysis were applicable, the Supreme Court has yet

to apply the standardless discretion analysis outside the context of a traditional public forum, but several circuits that have done so have recognized that public officials have more discretion in limiting speech in nonpublic fora than is the case with traditional public fora. *Id.* at *17 (quoting *Child Evangelism Fellowship of MD, Inc. v. Montgomery Cnty. Pub. Schs.*, 457 F.3d 376, 387 (4th Cir. 2006) ("[T]hat discretionary access is a defining characteristic of the nonpublic forum suggests that more official discretion is permissible in a nonpublic forum than would be acceptable in a public forum . . . .")). The court concluded that because a courthouse/municipal building is a nonpublic forum, and it had already found that the order was a reasonable restriction on the plaintiff's right to record, his "unbridled discretion" claim failed. *Id.* at *18.

Here, as in *McKay*, Molino's "unbridled discretion" argument has no application because his claim is one of access, not expression. But even if the standardless discretion analysis applies, as the *McKay* court observed, in the context of a nonpublic or limited public forum such as a courthouse, "the government has much more leeway in imposing restrictions on expressive conduct."[3] *Id.* at *17. Because, as set forth above, Rule 8.115(C)(3)(b) is both viewpoint neutral and reasonable in light of the purpose of a courthouse, it constitutes a reasonable restriction on Molina's right to record. Thus, this argument fails. *See Sheets*, 415 F. Supp. 3d at 1124–27 (concluding that ordinance prohibiting recording of individuals without their consent did not constitute unbridled grant of discretion; any discretion individuals had to refuse consent was

---

[3] A prior restraint in a nonpublic or limited public forum is permissible if it is both reasonable and viewpoint neutral. *United States v. Murtari*, 120 F. App'x 378, 380 (2d Cir. 2004) (concluding that an order barring the defendant from engaging in certain conduct in a federal building was both reasonable and viewpoint neutral; *Krishna Lunch of S. Cal., Inc. v. Beck*, 651 F. Supp. 3d 1165, 1176 (C.D. Cal. 2023) ("A prior restraint in a limited public forum need only be reasonable and viewpoint neutral." (citing *Griffin v. Bryant*, 30 F. Supp. 3d 1139, 1173 (D.N.M. 2014)).

personal and limited to each individual and no employee could prevent the plaintiff from recording other employees or parts of the building).

### 2.    Fourth Amendment

In Count Two, Molina alleges that enforcement of Rule 8.115(C)(3)(b) against him constituted an unreasonable seizure of his First Amendment rights in violation of the Fourth Amendment. (ECF No. 1 at PageID.8.) More specifically, he alleges that "[t]he rule's enforcement resulted in a significant interference with the Plaintiff's possessory interest in exercising his First Amendment rights, as protected by the Fourth Amendment." (*Id.*)

The Fourth Amendment preserves the right of citizens "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The simple language of the [Fourth] Amendment applies equally to seizures of persons and to seizures of property." *Payton v. New York,* 445 U.S. 573, 585 (1980). A person may be seized in one of two ways: "(1) use of force with the intent to restrain; or (2) show of authority with acquisition of control." *Campbell v. Cheatham Cnty. Sheriff's Dep't*, 47 F.4th 468, 476 (6th Cir. 2022) (citing *Torres v. Madrid*, 592 U.S. 306, 316–17 (2021). In the context of a show of authority, "a seizure occurs if 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Id.* at 476–77 (quoting *Brendlin v. California*, 551 U.S. 249, 255 (2007)). "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

Molina's Fourth Amendment claim fails because he alleges no fact indicating that he or his property was seized under the Fourth Amendment. He does not allege that he was seized; he was not subjected to force, nor does he allege the existence of circumstances that would lead a reasonable person to believe that he was not free to leave. In fact, Molina admits that he was

17

"trespassed" from the courthouse, meaning that he was directed to leave the building. Likewise, Molina fails to allege that any Defendant interfered with his possessory interest in any property. Molina's assertion that his First Amendment rights constituted property is meritless, as no person has a property interest in constitutional rights. Accordingly, he fails to state a claim for a Fourth Amendment violation.[4]

### 3.    Due Process Violations

In Count Three, Molina alleges that Rule 8.115(C)(3)(b) violates his right to due process under the Fourteenth Amendment because it unconstitutionally vague. I have addressed this claim as part of the analysis of his First Amendment claim, and it fails for the reasons previously given.

### III. Conclusion

For the foregoing reasons, I recommend that the Court dismiss Molina's complaint as barred in part by the Eleventh Amendment and for failure to state a claim.

The Court must also decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Good faith is judged objectively, *Coppedge v. United States*, 369 U.S. 438, 445 (1962), and an appeal is not taken in good faith if the issue presented is frivolous, defined as lacking an arguable basis either in fact or law. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). For the same reasons that I recommend dismissal of the action, I discern no good faith basis for an appeal and recommend that, should Molina appeal this decision, the Court assess the $605.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610-11.

---

[4] Molina's reliance on *Soldal* in his complaint is misplaced. The petitioners in *Soldal* established a Fourth Amendment violation because they were dispossessed of their property—a mobile home—not some constitutional right. 506 U.S. at 61.

Date:  September 17, 2024                          /s/ Sally J. Berens
                                                 SALLY J. BERENS
                                                 U.S. Magistrate Judge

     OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).